**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-21901-CIV-ALTONAGA/Reid**

RAQUEL PACHECO,

      Plaintiff,

v.

CITY OF MIAMI BEACH; STEVEN
MEINER, in his individual capacity;
DAVID SUAREZ, in his individual capacity; and
WAYNE A. JONES, in his individual capacity,

      Defendants.

_____/

_____

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR**
**JOINT MOTION TO DISMISS SECOND AMENDED COMPLAINT**

_____

**INTRODUCTION**

The Motion, ECF No. 77, established Counts I and II should be dismissed because a brief interaction with police, unaccompanied by the imposition or threat of adverse consequences, is not actionable under the First Amendment. Plaintiff's authorities are inapposite, as they involve the imposition or threat of an adverse consequence not found here. The Motion also showed that Plaintiff's new theory that this conversation was part of a broader campaign against her at two Commission meetings, fails. Plaintiff does not dispute that an elected official's speech is not actionable absent some threat of imminent punishment. Instead, she insists that the alleged conduct must be considered together, but offers no authority suggesting that a police visit coupled with discussion about it at a public meeting could amount to an ongoing campaign of harassment.

Second, Count III should be dismissed because there has been no prohibition on Plaintiff's speech and a vague and incomplete statement, without any threat of sanctions, is not the type of informal coercion which has been found to be a prior restraint. Third, Plaintiff has not established *Monell* liability against the City because she has not alleged a widespread and persistent pattern of unconstitutional misconduct and her unpled theory of ratification fails. Plaintiff offers no direct response to the argument that Count IV fails as to the City and has therefore conceded the issue.

Fourth, Count IV fails to state a claim against Commissioner Suarez as there are no factual allegations that he had actual authority to speak on social media on behalf of the City. And even if there were, Plaintiff does not show he exercised state authority on his personal Facebook page.

Finally, the individual defendants are entitled to qualified immunity because neither a police inquiry, nor comments made by elected officials during a public meeting, nor blocking Plaintiff from a personal Facebook page violate a clearly established right, and Plaintiff's invocation of broad First Amendment principles does not dictate otherwise.

**ARGUMENT**

I. **COUNTS I AND II FAIL BECAUSE THERE WAS NO INFRINGEMENT ON THE EXERCISE OF FIRST AMENDMENT RIGHTS**

A. **Mere Police Questioning Does Not Amount To An Adverse Action**

Plaintiff's claims are predicated on the theory that Defendants violated the First Amendment based on a brief visit by two Miami Beach police officers to her doorstep to evaluate the public safety risk raised by a comment made on the Mayor's social media page in which she falsely accused him of "consistently call[ing] for the death of all Palestinians." As shown in the

Motion (at 10-11), officers merely asking questions about a social media post, without some additional concrete action, is not an adverse action that gives rise to a First Amendment claim.[1]

Plaintiff attempts to bolster her allegations by asserting that an officer "ordered" her not to post in the future, and that this constituted an adverse action. But, as described in the Motion, at best this was a vague and incomplete statement within a discussion about the potential public safety risks stemming from such a post. The video shows that, after explaining that statements like hers could lead to violence by others, the officer stated "I would think to refrain from posting things like that" and started to explain, but Plaintiff cut him off, cited her speech rights, and the interaction ended. Mot. at 4-6 & n.3; Resp. at 4 n.1; *Connelly v. Hall*, 2025 WL 1124528, at *2 (S.D. Fla. Apr. 16, 2025) (facts should be viewed in the light depicted by video where it clearly contradicts allegations). Plaintiff offers no meaningful response to these points. Regardless, courts have found far more direct statements do not rise to actionable infringement. Mot. at 10-11.

The Response argues that Defendants did not have "even arguable probable cause to believe that Plaintiff had committed a crime." Resp. at 13. But this misses the point; suspicion that Plaintiff committed a crime is not needed to justify the police's conversation at her doorstep. Chief Jones noted that Plaintiffs' claims on social media regarding the Mayor "are undeniably provocative" and "have the potential to incite others to escalate to that level." Compl. ¶ 63. The "knock and talk" is a routine investigatory tool used to determine whether the post had provoked any public safety concerns. Mot. at 7, 12 n.9. Notably, Plaintiff does not deny that it is inflammatory to claim on social media that the Mayor of Miami Beach has "consistently called for the death of all Palestinians," nor does she dispute that such a statement could create risks for the Mayor, his family, or other Jewish residents of Miami Beach, particularly in the current environment. Nor does it matter that the conversation purportedly arose from a City official forwarding the social media post. Resp. at 9. The Motion cited authorities finding no adverse action notwithstanding that the conduct at issue involved an allegedly retaliatory intent.[2]

---

[1] Plaintiff suggests Defendants did not apply an objective standard on this element. ECF No. 80 ("Response") at 7. This is not true, as the Motion (at 10-11) relies on authority applying the proper ordinary firmness standard. Defendants merely noted that Plaintiff's own repeated allegations that she refrained from publicly criticizing City officials after January 12th are undermined by the fact that she spoke forcefully about the incident during the next Commission meeting. Mot. at 12.

[2] It is unclear how Plaintiff (Resp. at 8 n.2) can characterize the minutes-long discussion at her doorstep as "far exceed[ing] in severity" the facts in *Rehberg v. Paulk*, 611 F.3d 828, 835–36 (11th Cir. 2010), in which the Eleventh Circuit held there was no clearly established right related to a

Plaintiff also argues that an officer need not threaten arrest to constitute an adverse action. Resp. at 7-10.  But this mischaracterizes Defendants' argument, which is not that an arrest need be made or immediately threatened, but that *some* form of consequence – be it an arrest, citation, discipline, further investigation, violence, etc. – must be imposed or threatened to be actionable.

Plaintiff's authorities are easily distinguished, as they all involved the imposition or threat of adverse consequences.  *See, e.g.*, *Pittman v. Tucker*, 213 F. App'x 867, 870–71 (11th Cir. 2007) (police statements could be easily interpreted as threats of physical violence); *Bailey v. Wheeler*, 843 F.3d 473, 481–82 (11th Cir. 2016) (BOLO alert which incited officers to fear for their lives potentially endangered plaintiff's life); *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) (receipt of multiple parking tickets); *Dingwell v. Cossette*, 327 F. Supp. 3d 462, 472–73 (D. Conn. 2018) (series of intimidation and threats of specific future harm, including traffic stop, threat to go after his family, arrest of his son, threats of criminal investigation, and surveillance detail)[3]; *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 48, 53–54 (D.D.C. 2013) (threats that if demonstrator remained on sidewalk, her information would be added to the Secret Service list); *Cohoon v. Konrath*, 563 F. Supp. 3d 881, (E.D. Wisc. 2021) (threat of arrest).

Plaintiff also cites *Lozman v. City of North Bay Village*, 2009 WL 10699944 (S.D. Fla. Feb. 12, 2009), for the proposition that simply distributing a pornographic cartoon was sufficient to support a retaliation claim.  The plaintiff there alleged, among other things, that the mayor repeatedly interrupted and ejected him from commission meetings and the police chief investigated an unrelated, rumored sexual assault and sealed criminal records to dig up information on him. The chief then mailed to plaintiff and distributed explicit cartoons, later investigated by the FDLE, in which one character begged the other to not expose details of the alleged assault and suggested the information would not be revealed if he engaged in sexual acts.  *Id.* at *1-3, 11; *see also Bloch v. Ribar*, 156 F.3d 673, 680–81 (6th Cir. 1998) (sheriff's release of highly personal, humiliating, and unrelated details regarding rape suffered by plaintiff in response to criticism).  There is no

---

retaliatory investigation, even though the district attorney's office, as a favor to a hospital that the plaintiff had criticized, initiated a criminal investigation without probable cause, obtained his phone records and personal emails, and ultimately secured indictments against him.

[3] Plaintiff cites only a portion of the analysis, in which the court rejected an officer's and the chief's argument for qualified immunity because their actions only involved posts about the son's arrest and an email threatening criminal investigation.  In the context of allegations that the police department used its power and authority to threaten, intimidate, and embarrass, this was sufficient to survive the motion to dismiss.  *Id.* at 476–77.  There is no such fact pattern here.

comparable act of unrelated, gratuitous intimidation that could rise to the level of those cases here.

### B. Plaintiff Has Not Alleged A Campaign Of Harassment Against Her

In a tacit admission that the brief police interaction does not constitute an adverse action, Plaintiff amended her allegations to assert that the conversation was part of a "campaign" against her that "continued with the orchestrated attack on her beliefs and character" at two subsequent Commission meetings. The Motion explained that Plaintiff's characterization of the meetings is contradicted by video, which reflects that the February meeting was an open forum discussion, itself protected by the First Amendment and legislative immunity,[4] during which time Plaintiff, constituents, and Commissioners gave their points of view on the officer visit, the language in the post and whether it crossed the line to incitement, and how the City should address citizen concerns on the issue. Mot. at 13-14. The fact that Plaintiff (at 13) invites consideration of whether publicly labeling her antisemitic creates the "potential for hateful response" underscores that this discourse is protected under the First Amendment. *Frank v. Fine*, 2024 WL 473718, at *6 (M.D. Fla. Jan. 5, 2024) (official referring to plaintiff as a Nazi not adverse action or defamation).

The Motion demonstrated that retaliation based on the speech of elected officials as is alleged here is not actionable absent threat, coercion, or intimidation intimating imminent punishment, sanction, or adverse retaliatory action. Here, no such threats followed this debate.[5] Plaintiff does not dispute that these discussions are themselves protected speech or that speech by an elected official is not actionable absent a threat of imminent punishment, which was not present here. Instead, Plaintiff claims that this authority is not controlling because Mayor Meiner forwarded a post that he found concerning and officers spoke with Plaintiff about the post. But the fact that a knock and talk was conducted does not mean that a subsequent public discussion of that action is not protected speech. Those cases hold that comments made at the Commission

---

[4] Plaintiff asserts that legislative immunity does not apply because the conduct at issue purportedly did not involve the enactment of legislation. Resp. at 12 n.4, 25-26. But this disregards authority holding that "any statements made on the floor of the legislature during public meeting" and "debate and reacting to public opinion" are protected by legislative immunity. Mot. at 15.

[5] Plaintiff equates comments made by officials during the meeting to statements made in a police BOLO found likely to chill speech in the *Bailey* case. Resp. at 10 n.3. But in *Bailey*, gratuitous statements describing plaintiff as dangerous to law enforcement in the BOLO alert gave officers a reasonable basis for using force if they encountered him, thereby creating a situation that "potentially seriously endangered" plaintiff's life. 843 F.3d at 481–82. Here, the open forum discussion at the Commission meeting did not involve any imminent threat or danger to Plaintiff.

meetings cannot, without some imminent threat, form the basis of a claim for retaliation.[6]

To the extent Plaintiff claims that the knock and talk and the two Commission meetings together constitute a "campaign" against her, the Motion also established that those allegations fall far short of the type of ongoing harassment that has been found to chill speech.  Plaintiff cannot dispute that the allegations here are a far cry from the ongoing conduct in *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005).  While Plaintiff claims this does not matter because *Bennett* did not establish a minimum threshold, she offers no assessment of where such a line may lie.  Indeed, Plaintiff cites no authority suggesting that a knock and talk, followed by two public meetings during which constituents and elected officials discussed and debated the merits of that action, could be considered conduct that is sufficiently pervasive, organized, and ongoing so as to constitute a "prolonged campaign of harassment" that could chill speech.

The authorities that Plaintiff does cite instead highlight this distinction.  For example, in *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982), the court held there was a question of fact as to the actionability of plaintiff's allegations that, after she was required to take a leave of absence from her job with the city to run for mayor, she was subjected to a campaign of petty harassments in her workplace, including a reprimand for endorsing a candidate and ridicule through selective enforcement of work rules.  Similarly, in *Dingwell*, 327 F. Supp. 3d at 472–73, an officer's threat to go after plaintiff's family, the arrest of his son, an officer's warning to "keep quiet and lay low" at a city council meeting, a detective's warning of criminal investigation for any further emails, and initiation of surveillance were considered a "series of intimidation tactics" that caused plaintiff to fear publicly speaking.  The brief interaction evaluating potential safety risks and subsequent open forum discussion is unlike the ongoing and pervasive harassment found in those cases.

## II.    COUNT III FAILS BECAUSE THERE WAS NO RESTRAINT ON SPEECH

The Motion established that Count III fails as a matter of law because the officer's incomplete statement that "I would think to refrain from posting things like that" was not an advanced order imposing an unlawful prior restraint on Plaintiff's speech. Mot. at 15-16.  Contrary to Plaintiff's assertions, the Motion acknowledged that courts have extended this doctrine under certain circumstances to include forms of government pressure and intimidation that do not amount

---

[6] Plaintiff takes issue with the fact that the Motion addressed these alleged actions separately. Resp. at 13 n.5.  But the Motion demonstrated that the actions failed to state a claim whether they were considered separately or collectively.  Mot. at 13-15.

to a formal order or restraint. *Id.*; Resp. at 14. Plaintiff simply disregards Defendants' argument that the statement here cannot rise to the level of coercive censorship found in such cases. *Id.*

Instead, the Response merely reiterates Plaintiff's claim that informal restraints on speech can violate the First Amendment because of their chilling effect. For example, Plaintiff relies on *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), which held that a morality commission that investigated and recommended the prosecution of book publishers for violation of obscenity law operated as "a scheme of state censorship effectuated by extralegal sanctions" and amounted to a coercive prior restraint. *Id.* at 68 & 72. A single statement, unaccompanied by any threat, is a far cry from a state-run system that so efficiently regulated through the threat of prosecution that it effectively rendered unnecessary criminal enforcement of those laws.

Plaintiff disregards this distinction and instead asserts that her claim is viable because police could have enforced a threat (if one had been made). But this overlooks that her cited authority all involve either systemic regulation of speech or overt threats from government officials that is nothing like the facts here. *See, e.g.*, *Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022) (university bias-related incident policy that empowered anonymous accusations and created a response team to track and investigate allegations, which could include referral to school officials for discipline and sharing of information with police, acted as prior restraint likely to intimidate and silence students); *CAIR-Found., Inc. v. Desantis*, 2026 WL 613468 (N.D. Fla. Mar. 4, 2026) (executive order designating group as "terrorist organization" and withholding benefits from anyone providing it material support coerced third parties); *Okwedy v. Molinari*, 333 F.3d 339, 342 (2d Cir. 2003) (overt threat of financial impact); *NRA of Am. v. Vullo*, 602 U.S. 175, 198 (2024) (threat of enforcement actions by superintendent of state department of financial services).

## III.   PLAINTIFF'S CLAIMS FAIL AS TO THE CITY

*First*, the Motion established that, even if Plaintiff could state a claim for a constitutional violation, she cannot establish that she suffered a deprivation of her rights pursuant to an official policy or custom of the City. Mot. at 16-18 (citing, *e.g.*, *Monell*). Specifically, the handful of political and legislative activities unrelated to Plaintiff and the alleged events underlying her claims do not constitute a widespread and persistent pattern of unconstitutional conduct amounting to the functional equivalent of a policy of the City.

Plaintiff's suggestion (at 16) that unrelated legislation is somehow an official City policy governing the police interaction here is baseless. Plaintiff also asserts that these activities constitute

a pattern of targeting speech critical of Israel.  Resp. at 17-19.  But she does not cite any authority holding that the general purported motivation behind certain legislation or opinions expressed by public officials – the thin thread supposedly connecting the activities here – is an actionable municipal custom.  *Compare United States v. O'Brien*, 391 U.S. 367, 384 (1968) (motivations of individual legislators enacting a law are irrelevant to the question of its constitutionality).

Plaintiff cites *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016), which further illustrates that the pattern of conduct alleged must be sufficiently similar in nature to one's own alleged injuries.  In *Hoefling*, plaintiff adequately alleged that the unlawful seizure and destruction of his sailboat by marine patrol officers was caused by a city policy of failing to follow established laws and procedures regarding the investigation and removal of purportedly derelict vessels.  *Id.* at 1280.  In other words, plaintiff cited a pattern of conduct that was the same as his claimed injury.

This case is instead more like the decision in *Riddle v. Omaha Public Schools*, which held that a number of incidents, including cutting off microphones during a board meeting, reaching out to the employers of those who opposed school policy, a search of a student's home, and failure to answer community requests for information about school policy, were not shown to be unconstitutional or widespread, consistent, or similar enough in nature to plaintiff's alleged injuries to constitute a school board policy or custom.  2024 WL 1953758, at *5 (D. Neb. Apr. 19, 2024).  This case did not merely involve a handful of disparate allegations as Plaintiff claims; instead, analogous to the claims here, Riddle had alleged that these incidents constituted a pattern of unconstitutionally targeting critics of the school board, which was not a sufficient thread.  *Id.*

Plaintiff also suggests in passing there is a reasonable inference that the "challenged practice" was ratified.  Resp. at 17.  But this theory is not pled and Plaintiff may not amend her pleadings through a response to a motion to dismiss.  *Miles v. Carnival Corp.*, 767 F. Supp. 3d 1368, 1376–77 (S.D. Fla. 2025).  Even considering this theory, ratification exists when an unconstitutional decision by a subordinate public official is adopted by someone with final policymaking authority, who must "ratify not only the decision itself, but also the unconstitutional basis for it."  *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002).  Ratification "generally requires more than acquiescence."  *Perez v. City of Opa-Locka*, 2025 WL 2793758, at *19 (S.D. Fla. Aug. 21, 2025).  Here, there is no allegation in the Complaint that any of the individuals allegedly involved were final policymakers.  Nor is there any allegation that a final policymaker agreed that an officer may instruct a resident not to exercise her First Amendment

rights (even if that had happened, which it did not). A statement by the Chief that officers engaged in a conversation to ensure no immediate threat may emerge is not a ratification of the alleged unconstitutional order given by the officers. This unpled theory should therefore be rejected.

*Second*, the Motion (18-19) showed that Plaintiff cannot establish a claim against the City on Count IV based on allegations that Commissioner Suarez blocked Plaintiff from his personal Facebook page. While Plaintiff addresses Suarez's argument, she offers no direct response to the City's arguments that she cannot establish a claim against the City and has therefore conceded this argument. *Hendershott v. Ostuw*, 2020 WL 13111216, at *5 (S.D. Fla. Oct. 14, 2020).

## IV.   COUNT IV FAILS TO STATE A CLAIM AGAINST COMMISSIONER SUAREZ

Plaintiff has not properly met either prong under *Lindke v. Freed*, 601 U.S. 187, 194 (2024). As to the first prong (actual authority to speak on behalf of the City), Plaintiff asserts Commissioner Suarez's alleged actual authority is somehow rooted in a City Charter and a City Code provision – neither of which were alleged in the Complaint. Plaintiff is precluded from asserting new factual allegations in response to a motion to dismiss, and thus such assertions should be disregarded. *Miles*, 767 F. Supp. 3d at 1376–77. Regardless, these two provisions did not bestow upon Commissioner Suarez the requisite actual authority mandated by *Lindke*.

Plaintiff first cites to Section 2.03 of the City Charter[7] as a general provision relating to a commissioner's power "to do and perform all things necessary for the government of the City" and then makes the logical jump that such provision "makes the Commission the City's primary governing authority to communicate the City's positions on matters within its jurisdiction." Resp. at 20. However, this provision only pertains to the Commission as a whole and not to any specific individual commissioner. More importantly, this provision does not give any authority to anyone, much less Commissioner Suarez, to speak on behalf of the City. Plaintiff's next citation to City Code Section 2-14(9)[8] that supposedly "authorizes" elected officials to respond to constituent inquiries is likewise unavailing, as the ability to respond to a constituent inquiry is far from the required expressed authority to be able to speak on behalf of the City.

Plaintiff's deduction and extrapolation of these Charter and Code provisions fall far short

---

[7] Plaintiff incorrectly refers to this as a City Code provision.

[8] There is no Section 2-14(9) in the City's Code. Plaintiff may be referring to Section 2-14(d)(9), which deals with the handling of agenda items during a Commission meeting. It has absolutely nothing to do with granting authority to a Commissioner to speak on behalf of the City.

of the specific authority required by *Lindke*.  Courts applying *Lindke* "generally require an explicit and narrow creation of authority, rather than one that is deduced or extrapolated from general duties of legislators."  *Devore v. McCombie*, 2026 WL 1283880, *3 (N.D. Ill. May 11, 2026) (dismissing complaint for failure to sufficiently identify actual authority to speak on behalf of state); *Fox v. Faison*, 798 F. Supp. 3d 809, 822 (M.D. Tenn. 2025) (state representative did not have actual authority to speak on behalf of state when neither state constitution nor legislators' oath created that authority); *Dixon v. Clyburn*, 2024 WL 5379014, at *6 (D.S.C. Oct. 10, 2024) (dismissing complaint that lacked "sufficient factual allegations to show [congressman] exercised actual authority to speak on behalf of the Legislature when he spoke via his Twitter accounts").

Courts must not, as Plaintiff attempts to do here, rely upon "excessively broad job descriptions" to conclude that a public official is authorized to speak for the State.  *Ha Chau v. X Corp. at al.*, 2026 WL 1303058, *7 (N.D. Cal. May 12, 2026) (citing *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 529 (2022)).  "The inquiry is not whether making official announcements *could* fit within the job description; it is whether making official announcements is *actually* part of the job that the State entrusted the official to do." *Lindke*, 601 U.S. at 201 (emphasis original).[9] Clearly, no such actual authority exists, much less is alleged, and as such, Plaintiff's claim against Suarez should be dismissed.  *Lindke*, 601 U.S. at 201 (failure to meet the first prong under state actor test (i.e. possession of actual authority) disposes of the claim against the public official).[10]

Regarding the second *Lindke* prong (which the Court need not reach), Plaintiff fails to address Suarez's arguments.  Rather, she simply asserts that his Facebook page is "at minimum, a mixed-use account" because it is titled "David Suarez Miami Beach Commissioner Group 5." Resp. at 21.  Yet, the only allegation (Compl. ¶ 152) regarding the subject page pertained to a Town Hall meeting being promoted by Suarez, while still missing a key allegation that such post was official City information that was to be shared exclusively on that Facebook page.  Combined with the fact that were are no links to the City's Facebook page, City's webpage, City's phone

---

[9] The court in *Fox* recognized that at least one commentator has observed that "Justice Barrett's opinion…signaled that the test should be understood narrowly," insofar as the opinion emphasized that it is "not enough that 'making official announcements *could* fit within the job description [of the public official].'" Evelyn Douek & Genevieve Lakier, Comment, *Lochner.com?*, 138 Harv. L. Rev. 100, 150 (2024) (alteration in original) (quoting *Lindke*, 601 U.S. at 201).

[10] Plaintiff does not assert authority based upon longstanding custom as she does not (and cannot) dispute that the Complaint lacks any allegations that Commissioner Suarez's actions with respect to his Facebook posts are so permanent and well-settled that they take on the force of law.

number, or even Suarez's City office number, Plaintiff does not demonstrate that Suarez's personal page has the "trappings" of a city official exercising any authority to speak on behalf of the City.

## V.   MAYOR MEINER IS ENTITLED TO QUALIFIED IMMUNITY

Plaintiff's Response confirms that Mayor Meiner is entitled to qualified immunity.[11] The Complaint makes clear that Mayor Meiner indisputably acted within his discretionary authority, so the burden falls to Plaintiff to overcome the defense, *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003), and she cannot. The conduct the Complaint attributes to Mayor Meiner is narrow: he forwarded Plaintiff's public Facebook post to Chief Jones, and later publicly defended a police inquiry. Compl. ¶¶ 59, 101-105. Neither act is a First Amendment violation in the first place. *See supra*.[12] But the Court need not even reach that question: even assuming a violation, no clearly established law placed Mayor Meiner on notice that his conduct was unlawful, and that alone entitles him to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

Plaintiff concedes there is no case holding that a mayor violates the First Amendment by forwarding a constituent's public post to the Chief of Police or by later defending a subsequent police inquiry. Resp. at 24. She instead relies on the narrow route by which a broad principle can clearly establish law – where it applies with "obvious clarity." *Terrell v. Smith*, 668 F.3d 1244, 1255–56 (11th Cir. 2012). The principle must govern the official's specific conduct so clearly that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law[.]" *Id.* at 1256. "[C]learly established law" may not be "define[d] ... at a high level of generality" and must be particularized to the facts of the case. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *White v. Pauly*, 580 U.S. 73, 79 (2017). The principle must rest on "controlling authority" or a "robust consensus of cases of persuasive authority" placing the question "beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 63

---

[11] Plaintiff attempts to evade qualified immunity scrutiny by lumping Meiner and Jones together as part of a "single scheme." Resp. at 22 n.11. Plaintiff's framing fails, however, because qualified immunity is assessed defendant by defendant, based on each official's own conduct. *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).

[12] As set forth in the Motion, the Commission record Plaintiff incorporates in the Complaint reflects that the decision to send officers to Plaintiff's house was Chief Jones' own, and that Mayor Meiner neither requested it nor knew of it. Mot. at 7, 25. Additionally, Plaintiff was not deterred from speaking: she posted her video of the police encounter publicly, then attended the next two Commission meetings and criticized the Mayor and the police at length over the same incident she now says silenced her. *Id.* at 10-12, 25; Compl. ¶¶ 83, 90, 112.

(2018). Thus, a broad legal truism that the First Amendment forbids retaliation does not satisfy that standard. *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019).

Plaintiff's framing of the right defeats her own argument against qualified immunity. Plaintiff describes the controlling principle as the general rule that "government may not retaliate against its citizens for engaging in First Amendment-protected speech." Resp. at 23-24. But that is the paradigmatic "broad general proposition" the Supreme Court has held cannot clearly establish law at the required level of specificity. In *Reichle v. Howards*, 566 U.S. 658, 665 (2012), the Court rejected that very framing, holding that the relevant right "is not the general right to be free from retaliation for one's speech," but must be defined with specificity. The Eleventh Circuit has likewise rejected the identical principle in the First Amendment context. In *Echols v. Lawton*, 913 F.3d 1313, 1324 (11th Cir. 2019), the court held that the general principle that "the government may not retaliate against citizens for the exercise of First Amendment rights" was "too broadly stated" because that "general principle does not resolve with 'obvious clarity'" whether particular conduct is unlawful. Accordingly, Plaintiff's broad anti-retaliation principle is too broadly stated to clearly establish that Meiner's specific alleged conduct violated any clearly established law.[13]

Plaintiff fares no better if the right is defined specifically, because the specific right she appears to invoke is one the Eleventh Circuit has held is *not* clearly established. Plaintiff characterizes the relevant conduct as "an improper police investigation." Resp. at 24. But in *Rehberg v. Paulk*, 611 F.3d 828, 850–51 (11th Cir. 2010), the court held that neither the Eleventh Circuit nor the Supreme Court has ever recognized a stand-alone First Amendment right to be free from a retaliatory investigation, and that "retaliatory animus does not create a distinct

---

[13] None of the authorities Plaintiff cites is to the contrary. *Hartman v. Moore*, 547 U.S. 250, 256–57 (2006), concerned a retaliatory criminal prosecution and did not even analyze the "clearly established" prong of the qualified immunity analysis. *Duncan v. City of Sandy Springs*, 2023 WL 3862579 (11th Cir. June 7, 2023), is unpublished and cannot clearly establish the law. *See J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 n.1 (11th Cir. 2018) ("Unpublished cases ... do not serve as binding precedent ... and cannot be relied upon to define clearly established law[.]"). But even if it could, *Duncan* arose from a violent, warrantless arrest made without arguable probable cause, and its statement that the right to be free from retaliatory *arrest* is clearly established says nothing about the conduct alleged here. 2023 WL 3862579, at *1–3, 6. And *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995), dealt with whether a public university withheld funding in violation of the First Amendment. None of these cases have any bearing on the question that matters here: whether clearly established law would have put a reasonable mayor on notice that Mayor Meiner's alleged actions were unlawful.

constitutional tort."[14] In *Shiver v. City of Homestead*, 2021 WL 5174526, at \*8 (S.D. Fla. Oct. 4, 2021), the court explained that the Eleventh Circuit "has <u>explicitly</u> held that the right to be free from a retaliatory investigation is not clearly established."[15] Thus, to the extent Plaintiff's Response seeks to frame the right at issue as the right to be free from a retaliatory investigation, Plaintiff's position has been explicitly rejected by the Eleventh Circuit and thus fails.[16]

In sum, Plaintiff has not carried her burden to defeat Mayor Meiner's clear entitlement to qualified immunity. However she frames the right, it fails. Defined generally, it is the broad proposition that the First Amendment forbids retaliation – the very formulation *Reichle* and *Echols* hold is too generalized to clearly establish law. Defined specifically, it is the right to be free from a retaliatory investigation, which *Rehberg* holds is not a clearly established right. Either way, no clearly established law would have warned a reasonable mayor that the alleged actions in this case violated the First Amendment. Mayor Meiner is therefore entitled to qualified immunity, and the claims against him in his individual capacity should be dismissed with prejudice.

## VI.   MAYOR MEINER AND COMMISSIONER SUAREZ ARE ENTITLED TO LEGISLATIVE IMMUNITY

Plaintiff cannot evade legislative immunity by relabeling Commission meeting conduct as mere "evidence." Resp. at 26. She repeatedly treats Defendants' remarks at the February and May 2026 meetings as part of the actionable retaliation – a "public flogging" and "hazing" that would allegedly deter a person of ordinary firmness – yet later insists those same statements are "not themselves the basis for liability." *Id.* at 6, 11, 26. She cannot have it both ways, and either way

---

[14] Plaintiff mistakenly argues that her allegations "far exceed in severity" the facts of *Rehberg*. Resp. at 8 n.2. The investigation in *Rehberg* was launched without probable cause and as a favor to a third party, and it swept in the plaintiff's personal phone records and e-mails. *Rehberg*, 611 F.3d at 835. Forwarding a public post to the Chief of Police comes nowhere near that conduct.

[15] Plaintiff reaches outside this Circuit to a single decision, *Media Matters for America v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025), Resp. at 22 n.12, for the notion that "a bad faith police investigation, standing alone, can support a First Amendment claim." But an out-of-circuit case cannot clearly establish the law here. *See Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) ("As we have stated, only Supreme Court cases, Eleventh Circuit caselaw, and [forum state] Supreme Court caselaw can 'clearly establish' law in this circuit.").

[16] Plaintiff does not allege that Mayor Meiner went to her home, questioned her, or instructed her to "refrain from posting things like that" – those were the alleged acts of unnamed detectives, not Meiner. Compl. ¶¶ 77-80. But the conclusion would be the same even if Plaintiff could attribute the investigation itself to Mayor Meiner because under *Rehberg* and *Shiver*, even a retaliatory investigation undertaken with retaliatory animus does not violate clearly established law.

the meeting conduct cannot support liability because debate, reaction to public opinion, and the administration of proceedings at a formal Commission meeting are quintessential legislative acts. *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998); *DeSisto Coll., Inc. v. Line*, 888 F.2d 755, 765 (11th Cir. 1989). The claims against Mayor Meiner and Commissioner Suarez should be dismissed to the extent they rely on their statements or conduct during the meetings as retaliatory acts.

## VII.   CHIEF JONES IS ENTITLED TO QUALFIIED IMMUNITY

Even if a constitutional violation were pled against Chief Jones, he is entitled to qualified immunity.  Plaintiff cannot dispute that the allegations here do not even rise to the type of conduct (retaliatory investigation) that courts have squarely held does not violate a clearly established right. Instead, she claims that the right at issue is clearly established under the broad prohibition against First Amendment retaliation.  That argument is mistaken for the reasons set forth at length above. *See* § V (collecting cases); *see also Shiver*, 2021 WL 5174526, at *9.

Plaintiff also again asserts that the doorstep conversation was purportedly coupled with a "public campaign to humiliate and embarrass" her.  Resp. at 24.  But there is no allegation that Chief Jones was involved in the alleged harassment at the Commission meetings; at most, he responded to questions at the first meeting about the knock and talk and his assessment of the post. Mot. at 6-7.  Regardless, any such assertion that this interaction could amount to harassment fails for the reasons stated in the Motion and above. *Thompson v. Hall*, 426 F. App'x 855, 858–59 (11th Cir. 2011) (principle in *Rehberg* controlled even where plaintiff alleged campaign of harassment in addition to retaliatory investigation because allegations did not rise to level in harassment cases).

## VIII.   COMMISSIONER SUAREZ IS ENTITLED TO QUALIFIED IMMUNITY

As to Counts I and II, to the extent that Plaintiff asserts that Commissioner's Suarez's comments towards Plaintiff violated her First Amendment rights, she presents no caselaw (or even argument) that Suarez violated clearly established law when espousing his own protected viewpoints during a public meeting.  There are no assertions that Suarez had anything to do with Plaintiff's innocuous interaction with the police on January 12, 2026.  As to Count IV, Plaintiff sidesteps Suarez's argument that it is not clearly established law that an elected official may not block someone from their *personal* social media page when not vested with actual authority.  None of the cases cited by Plaintiff demonstrate otherwise.

### CONCLUSION

Defendants respectfully request that the Second Amended Complaint be dismissed.

Dated:  August 10, 2026

/s/  *Etan Mark*

Etan Mark (FBN 720852)
Charles M. Garabedian (FBN 1000974)
Jonathan L. Wolloch (FBN 1039105)
MARK FERRER & HAYDEN
Brickell City Tower, Suite 1999
80 Southwest 8th Street
Miami, Florida 33130
Telephone:  (305) 374-0440
etan@mfh.law
charles@mfh.law
jonathan@mfh.law

*Attorneys for Defendant*
*Steven Meiner*


/s/  *Matthew H. Mandel*

Joseph H. Serota (FBN 259111)
Matthew H. Mandel (FBN 147303)
WEISS SEROTA HELFMAN COLE
  & BIERMAN
2800 Ponce de Leon Blvd., Suite 1200
Coral Gables, Florida 33134
Telephone:  (305) 854-0800
jserota@wsh-law.com
mmandel@wsh-law.com

*Attorneys for Defendant*
*David Suarez*

Respectfully submitted,

/s/  *Enrique D. Arana*

Enrique D. Arana (FBN 189316)
Scott E. Byers (FBN 68372)
Rachel A. Oostendorp (FBN 105450)
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone:  (305) 530-0050
earana@carltonfields.com
sbyers@carltonfields.com
roostendorp@carltonfields.com

*Attorneys for Defendants*
*City of Miami Beach and Wayne A. Jones*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of August 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.  The NEF for the foregoing specifically identifies the recipients of electronic notice.

/s/  *Enrique D. Arana*

145527609.#

-14-