**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-21901-CIV-ALTONAGA/Reid**

**RAQUEL PACHECO**,

Plaintiff,

v.

**CITY OF MIAMI BEACH**, *et al.*,

Defendants.
_______________________________/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, Steven Meiner; David Suarez; Wayne Jones (collectively, "Individual Defendants"); and the City of Miami Beach's ("City['s]") Motion to Dismiss [ECF No. 77]. Plaintiff, Raquel Pacheco filed a Response [ECF No. 80]; to which Defendants filed a Reply [ECF No. 85]. The Court has reviewed the Second Amended Complaint ("SAC") [ECF No. 59], the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part.

## I. BACKGROUND

This is a First Amendment lawsuit brought by Plaintiff, a Miami Beach activist. (*See* SAC ¶ 20; *see also generally id.*). Defendants are the City, its Mayor (Meiner), its Police Chief (Jones), and a member of its City Commission (Suarez). (*See id.* ¶¶ 21–24). Plaintiff's allegations concern expression and conduct related to the Israel-Hamas conflict. (*See generally id.*).

***Factual Background.*** Plaintiff and Meiner have known each other since 2019 due to their involvement in Miami Beach politics. (*See id.* ¶ 47). Since 2024, Plaintiff has criticized Meiner's "support of Israel and retaliation against anyone who disagreed with him on Facebook and Instagram." (*Id.* ¶ 53). For example, on January 1, 2026, Meiner posted on Facebook about his

meeting with Israeli Prime Minister Benjamin Netanyahu and another Israeli politician. (*See id.* ¶ 54). Plaintiff replied to Meiner's post, commenting "SHAME on you! Standing with a baby killer and mass murderer and bringing this trash to our beautiful city. I am so glad all of your disgusting behavior is on record – it will haunt you for generations to come and I'm here for every second of it." (*Id.* ¶ 55 (capitalization in original; quotation marks omitted)).

On January 6, 2026, Meiner again posted on Facebook, writing:

> Miami Beach is a safe haven for everyone. Our city is consistently ranked by a broad spectrum of groups as being the most tolerant in the nation. By contrast, certain places like New York City are intentionally removing protections against select groups, including promoting boycotts of Israeli/Jewish businesses. Discrimination and hate against Jewish people never ends [sic] with the Jewish people. We will always stand firm against any discrimination.

(*Id.* ¶ 56 (quotation marks omitted)).

The next day, Plaintiff replied to Meiner's Facebook post ("Comment"), stating:

> The guy who consistently calls for the death of all Palestinians, tried to shut down a theater for showing a movie that hurt his feelings, and REFUSES to stand up for the LGBTQ community in any way (even leaves the room when they vote on related matters) wants you to know that you're all welcome here.

(*Id.* ¶ 57 (capitalization in original; quotation marks omitted)). Plaintiff left three additional comments on Meiner's post expressing strong disagreement with Meiner's views and policies. (*See id.* ¶ 58).

On January 11, 2026, Meiner allegedly emailed Jones a screenshot of the Comment with the expectation that Jones would initiate retaliation against her. (*See id.* ¶¶ 59–61). On January 12, 2026, Jones responded: "while she didn't issue a direct threat, her allegations are undeniably provocative and have the potential to incite others to escalate to that level." (*Id.* ¶ 63 (quotation marks omitted); *see also id.* ¶ 62). Plaintiff alleges that "Jones and/or Meiner directed two Miami Beach police officers to go to Plaintiff's home to confront her about the" Comment. (*Id.* ¶ 66).

The afternoon of January 12, 2026, two police officers presented themselves at Plaintiff's home. (*See id.* ¶¶ 68–74). After Plaintiff opened the door, one officer showed Plaintiff a Facebook post and asked if it was hers. (*See id.* ¶¶ 75–76). Plaintiff refused to answer. (*See id.* ¶ 76). The officer then read the Comment aloud and again asked if it was Plaintiff's; Plaintiff again declined to answer. (*See id.* ¶¶ 77–78).

One officer called the Comment "concerning" and explained the officers were "trying to prevent someone else getting agitated or agreeing with the statement," lest the Comment "incite somebody to do something radical[.]" (*Id.* ¶ 79 (alteration added; quotation marks omitted)). The officer then said that if the Comment was in fact Plaintiff's, "I would think to refrain from posting things like that." (Video posted by *The Independent*, Facebook, *Police in Miami Beach, Florida turned up at the home of Raquel Pacheco* . . . ("Police Encounter Video") (Jan. 20, 2026), https://tinyurl.com/ytm7u86a at 1:23–1:27); (*see* SAC ¶ 83 & n.2). The video that Plaintiff recorded of the interaction is one minute and 46 seconds long. (*See generally id.*). Plaintiff alleges that because of her encounter with law enforcement, she has refrained from engaging in protected speech, including by not responding to Miami Beach officials' social media posts, and by declining to post content of her own. (*See* SAC ¶¶ 84–88).

On February 5, 2026, Plaintiff attended the regularly scheduled City Commission meeting, during which her encounter with the Miami Beach police officers was discussed. (*See id.* ¶ 90). During a public comment period, certain speakers condemned Plaintiff and her opinions on the Israel-Hamas conflict. (*See id.* ¶¶ 92–93 (citations omitted)). Meiner allegedly allowed speakers expressing viewpoints sympathetic to Israel more time to speak as compared to those sharing Plaintiff's beliefs. (*See id.* ¶¶ 91, 94–95). Defendants devoted approximately 30 minutes of the meeting to a pre-planned presentation regarding Plaintiff and the Comment "for the purpose of

publicly embarrassing Plaintiff and forcing her to abandon her criticism of the City" and its officials. (*Id.* ¶ 96; *see also id.* ¶¶ 97–99, 101–02 (citations omitted)). Beyond the City Commission meeting, in speaking to the media, Jones, and Meiner further defended the decision to send officers to Plaintiff's home. (*See id.* ¶¶ 104–06 (citation omitted)).

On February 24, 2026, Plaintiff discovered she had been blocked from viewing Suarez's Facebook account, "an official channel for communicating with the public in his capacity as Miami Beach City Commissioner." (*Id.* ¶ 148; *see also id.* ¶ 160). This prevented Plaintiff from viewing or otherwise interacting with Suarez's account's content. (*See id.* ¶¶ 161–62). On May 20, 2026, at a City Commission meeting, Suarez made a presentation regarding Plaintiff and Defendants' characterizations of her views similar to that which took place at the February 2026 meeting. (*See id.* ¶¶ 110–12).

The conduct directed at Plaintiff allegedly took place amid Defendants' broader practices favoring pro-Israel expression and disfavoring pro-Palestine expression. For example, in March 2024, Defendants adopted an ordinance regulating protests whose alleged purpose "was to impair the expression of views critical of Israel" (*id.* ¶ 29 (quotation marks and citation omitted)); and in September 2024, the City passed an ordinance prohibiting itself from contracting with entities that boycott Israel (*see id.* ¶ 30 (citation omitted)). Plaintiff also recounts a March 2025 incident in which Meiner clashed with a Miami Beach movie theater that screened a film regarding Palestine that Meiner considered offensive. (*See id.* ¶¶ 31–37 (citations omitted)). On several occasions from 2024 through 2026, Meiner allegedly gave preferential treatment at City Commission meetings to speakers who expressed viewpoints favorable to Israel. (*See id.* ¶¶ 3, 38–46, 91–95 (citations omitted)).

***Procedural Background.*** In the SAC, Plaintiff brings four claims for relief premised on violations of the First Amendment to the U.S. Constitution, redressable through 42 U.S.C. section 1983. Counts I and II, against all Defendants, are viewpoint discrimination and retaliation claims, respectively, based on Plaintiff's interaction with the police at her home and the remarks made about Plaintiff at the February 5 and May 20, 2026 Commission meetings. (*See id.* ¶¶ 113–36). In Count III, against the City, Meiner, and Jones, Plaintiff alleges the officers' visit to her home constituted an unlawful prior restraint on her speech. (*See id.* ¶¶ 137–45). In Count IV, against the City and Suarez, Plaintiff asserts a viewpoint discrimination claim based on her inability to access or interact with Suarez's Facebook page. (*See id.* ¶¶ 146–69). Plaintiff seeks declaratory, injunctive, and monetary relief. (*See id.* 32–34).[1]

Defendants move to dismiss all Counts for failure to state claims upon which relief may be granted; including on qualified immunity grounds as to Meiner, Jones, and Suarez.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim tests the sufficiency of the pleading; it does not decide the merits of the case. *See Milburn v. United States*, 734 F.2d 762, 764–65 (11th Cir. 1984). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *id.* (alteration added; quoting *Twombly*, 550 U.S. at 555), or "a formulaic recitation of the elements of a cause of action[,]" *Twombly*, 550 U.S. at 555 (alteration added). "[O]nly a complaint that states a plausible

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard[,]" a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alterations added; citing *Twombly*, 550 U.S. at 556). On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

## III. DISCUSSION

### A. Count I (Individual Defendants)

Count I is a viewpoint discrimination claim asserted against all Defendants based on Plaintiff's interaction with the police at her home and the remarks made about Plaintiff at the February 5 and May 20, 2026 Commission meetings. (*See* SAC ¶¶ 113–26). The Court first addresses Count I as to the Individual Defendants and then addresses the Count as to the City.

"A restriction on speech constitutes viewpoint discrimination when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (quotation marks and citation omitted); *see also Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1284 (11th Cir. 2025) ("After all, viewpoint discrimination requires a defendant to have based his conduct on the plaintiff's viewpoint."). The parties' briefing does not treat Count I separately and instead focuses primarily on whether Plaintiff's allegations suffice under legal standards applicable to Count II. (*See* Mot. 9–15; Resp. 5–13; Reply 2–6). Defendants do not assert Count I is inadequately pleaded under the relevant standard. (*See, e.g.*, Mot. 10 (noting the standard applicable to Count I, but then

asserting both claims fail because Plaintiff's speech was not chilled, while failing to supply authority explaining that such failure means Count I is inadequately pleaded)). In any event, the Court assesses whether Count I states a claim.[2]

First, Plaintiff alleges two forms of conduct constituted a "restriction on speech[,]" *Jackson*, 762 F. App'x at 930 (alteration added): sending police to her home and making statements at the Commission meetings critical of Plaintiff's views (*see* SAC ¶¶ 121–23). The parties provide almost no briefing or citation to authorities relevant to Count I — including regarding whether either form of conduct is cognizable as part of a viewpoint discrimination claim. (*See* Mot. 9–15; Resp. 5–13; Reply 2–6). At any rate, courts recognize that a range of government acts can form the basis of a viewpoint discrimination claim, such as telling a plaintiff to leave the premises where he is protesting, *see Sheets v. Martin*, No. 25-cv-444, 2026 WL 74078, at *2–3 (M.D. Fla. Jan. 9, 2026); or deleting comments or blocking individuals from government social media pages, *see Biedermann v. Ehrhart*, No. 20-cv-01388, 2023 WL 2394557, at *8 (N.D. Ga. Mar. 7, 2023) (collecting cases). Considering these cases, the Court concludes that ordering a police visit to an individual's home to discuss the individual's speech can constitute a restriction on speech that would support a viewpoint discrimination claim.

By contrast, the government officials' remarks at the February and May 2026 Commission meetings were not restrictions on speech. That discourse — however zealous and disapproving it may have been — does not prevent or affirmatively discourage Plaintiff's speech. *See Biedermann*, 2023 WL 2394557, at *8; *see Sheets*, 2026 WL 74078, at *2–3. The remarks were

[2] The Court considers Plaintiff's viewpoint discrimination and retaliation claims separately under the standards applicable to each claim. *See, e.g.*, *Sheets v. Woelk*, No. 25-cv-61, 2026 WL 353195, at *2–3 (M.D. Fla. Feb. 9, 2026); *Keeton v. Anderson-Wiley*, 733 F. Supp. 2d 1368, 1377–79, 1381 (S.D. Ga. 2010). The Court nevertheless notes certain courts analyze such claims together when brought in the same suit. *See, e.g.*, *Sheets v. Lipker*, No. 25-cv-493, 2026 WL 265715, at *2–4 (M.D. Fla. Feb. 2, 2026); *Sheets v. Prummell*, No. 24-cv-943, 2025 WL 712805, at *2–3 (M.D. Fla. Mar. 5, 2025).

simply an extended expression of the officials' disagreement with Plaintiff's views. While Plaintiff alleges the police officers who visited her home discouraged her from posting content similar to the Comment, she does not allege any Defendant stated during the Commission meetings that she should refrain from expressing her views. (*Compare* SAC ¶ 80, *with id.* ¶¶ 90–103, 110–12).

Because the police visit to Plaintiff's home is the only alleged restriction on speech that can form the basis of a viewpoint discrimination claim, and there are no non-conclusory allegations of Suarez's involvement in the law enforcement visit, Count I is dismissed as to him. (*See id.* ¶¶ 47–89; *see also id.* ¶¶ 66, 121).

Second, Plaintiff must adequately allege Meiner and Jones ordered the police visit *because of* Plaintiff's views. *See Jackson*, 762 F. App'x at 930 (viewpoint discrimination exists "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction" (quotation marks and citation omitted)); *Huggins*, 151 F.4th at 1284. The allegations on this point are thin. As for Jones, Plaintiff does not allege he ordered the police visit due to her viewpoint on the Israel-Hamas conflict; in fact, Plaintiff alleges Jones expressed concern about the Comment's potential incitement of violence. (*See* SAC ¶¶ 62–66, 104; *see also generally id.*). Plaintiff lodges a conclusory allegation that Jones's representations were pretextual, and that in fact he ordered the police to go to Plaintiff's residence because of Plaintiff's viewpoint, but she does not substantiate this allegation with any supporting facts. (*See id.* ¶ 65). Count I is thus dismissed as to Jones. *See Huggins*, 151 F.4th at 1284 ("After all, viewpoint discrimination requires a defendant to have *based his conduct* on the plaintiff's viewpoint." (emphasis added)).

As for Meiner, Plaintiff similarly alleges his safety concerns were pretextual and that he sent police officers to Plaintiff's home because of the viewpoint she expressed. (*See, e.g.*, SAC ¶¶

60–61). Plaintiff supplies a fact corroborating that allegation: Meiner told the media the visit to Plaintiff's residence "was appropriate as [the Comment] was literally antisemitism 101[.]" (*Id.* ¶ 105 (alterations added; quotation marks and citation omitted); *see also* Mot. 14 (noting that Plaintiff and certain officials disagree "whether statements critical of Israel can amount to antisemitism" (citation omitted))). While Defendants offer a plausible alternative explanation for the officers' visit — one motivated by safety concerns (*see, e.g.*, Mot. 12 n.9) — Defendants well know that the Court does not weigh competing inferences in deciding a motion to dismiss, *see United States v. All-Med Billing Corp.*, No. 04-22075-Civ, 2005 WL 8155964, at *5 (S.D. Fla. Apr. 14, 2005). Plaintiff properly alleges her viewpoint motivated Meiner's decision to send police to her home.

In sum, Plaintiff has adequately alleged Meiner imposed a "restriction on speech" motivated by Plaintiff's ideology, opinion, or perspective. *Jackson*, 762 F. App'x at 930. Count I is dismissed as to the remaining Individual Defendants.

### B. <u>Count II (Individual Defendants)</u>

Count II is a retaliation claim asserted against all Defendants based on the same conduct as that supporting Count I: Plaintiff's interaction with the police at her home and the remarks made about her at the February 5 and May 20, 2026 Commission meetings. (*See* SAC ¶¶ 127–36). The Court first addresses Count II as to the Individual Defendants and addresses the Count as to the City below.

To adequately allege a first amendment retaliation claim, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d

1247, 1250 (11th Cir. 2005) (citations omitted). As to the second element, a "plaintiff suffers adverse action if the defendant's allbegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254.

Defendants contest only the second element, asserting neither the police visit nor the remarks at the Commission meetings constitute retaliatory conduct adversely affecting Plaintiff's speech. (*See* Mot. 9–15; Reply 2–6; *see also* Resp. 6). The parties supply no authority indicating whether the allegations regarding such events suffice to adequately support the second element of Count II. (*See generally* Mot.; Resp.; Reply). Defendants cite cases — mostly rulings on motions for summary judgment — they say indicate that informal police questioning without threatened consequences for speech is not adverse action cognizable as a retaliation claim. (*See* Mot. 10–11 (citations omitted)).[3]

Whether "a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact that is generally inappropriate to determine at the motion to dismiss stage." *Grissom v. Corizon LLC*, No. 19-cv-420, 2020 WL 3105413, at *7 (M.D. Ala. June 11, 2020) (citation omitted); *see also Osterback v. Kemp*, 300 F. Supp. 2d 1238, 1257 (N.D. Fla. 2003) ("The factual determination of the 'adverse action' requirement is not a matter of law, but a question of fact better left to the jury." (citation omitted)); *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422 (2015) ("[W]hen the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to

[3] In the only case Defendants cite involving a *dismissal* of a retaliation claim, the Eleventh Circuit affirmed dismissal where the alleged adverse action was merely an "anonymous second-hand rumor that" the government official intended to arrest the plaintiff "for some unknown reason." *Abella v. Town of Miami Lakes*, No. 22-12673, 2024 WL 729007, at *2 (11th Cir. Feb. 22, 2024). Plaintiff's allegations are more specific than those. Defendants also cite *Rehberg v. Paulk*, an appeal of an order on a motion to dismiss. 611 F.3d 828 (11th Cir. 2010). The claim to which Defendants refer, although a First Amendment claim, was a "retaliatory investigation" claim distinct from that asserted in Count II here; the opinion does not reference the person-of-ordinary-firmness standard. *See id.* at 850–51.

provide the fact-intensive answer." (alteration added; collecting cases)). The Court declines to dismiss Count II on the ground that alleged adverse actions taken against Plaintiff would not deter a person or ordinary firmness from exercising her rights.

Defendants raise a separate argument with respect to any alleged retaliation based on *their own* speech — that is, based on the Commission meetings rather than the police visit. (*See* Mot. 14–15). "[S]pecial concerns arise where, as here, the alleged retaliation consists of speech made by a public official[.]" *Shiver v. City of Homestead*, No. 21-21537-Civ, 2021 WL 5174526, at *13 (S.D. Fla. Oct. 4, 2021) (alteration added; quotation marks omitted; quoting *Bailey v. Wheeler*, 843 F.3d 473, 481 (11th Cir. 2016)). In that situation, most circuit courts of appeal require a plaintiff to allege "a public official's allegedly retaliatory speech amounted to 'a threat, coercion, or intimidation intimating that punishment, sanctions, or adverse regulatory action will imminently follow.'" *Id.* (alteration adopted; quoting *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019)). While the Eleventh Circuit acknowledged this trend in *Echols*, it did not decide whether such a requirement applies in this Circuit. *See Echols*, 913 F.3d at 1320 (collecting cases). Yet given "the overwhelming authority" from other circuits, the Court applies the requirement that Plaintiff show the Individual Defendants' allegedly retaliatory speech at the Commission meetings amounted to a threat, coercion, or intimidation. *Shiver*, 2021 WL 5174526, at *14.[4]

Plaintiff does not so allege. While Suarez expressed strident disagreement with Plaintiff's views during the Commission meetings, Plaintiff does not allege Suarez or any other Individual Defendant threatened, coerced, or intimidated her by indicating punishment, sanction, or adverse

[4] Plaintiff tries to resist application of *Shiver* by emphasizing the combined effect of the remarks at the Commission meetings together with the law enforcement visit. (*See* Resp. 12). But the standard discussed in *Shiver* does not contemplate aggregation of the defendant public official's speech together with his other alleged adverse actions; a plaintiff must allege the "public official's allegedly retaliatory *speech* amounted to a threat, coercion, or intimidation[.]" *Shiver*, 2021 WL 5174526, at *13 (alteration and emphasis added; quotation marks and citation omitted).

regulatory action would imminently follow if Plaintiff expressed her views. (*See* SAC ¶¶ 90–112, 127–36). Consequently, Plaintiff's allegations regarding the Commission meetings are not adverse actions that can support the claim in Count II. *See Shiver*, 2021 WL 5174526, at *13–14. The Court does not reach the parties' contentions regarding legislative immunity. (*See* Mot. 15; Resp. 25–26; Reply 13–14).

As noted regarding Count I, because Plaintiff alleges Suarez was involved only in the Commission meetings, not in the police visit to Plaintiff's residence, Count II is dismissed as to Suarez. The Court declines to dismiss Count II as to Meiner and Jones.

**C. <u>Count III (the City, Meiner, and Jones)</u>**

In Count III, brought against the City, Meiner, and Jones, Plaintiff alleges that the police interaction at her home constituted an unlawful prior restraint on speech under the First Amendment. (*See* SAC ¶¶ 137–45). The parties dispute whether Plaintiff may properly allege a prior restraint based on that visit. (*See* Mot. 15–16; Resp. 13–15; Reply 6–7).

"A prior restraint on speech prohibits or censors speech before it can take place." *Williamson v. Ala. Dep't of Mental Health & Mental Retardation*, No. 21-13274, 2023 WL 5287873, at *3 (11th Cir. Aug. 17, 2023) (quotation marks omitted; quoting *Cooper v. Dillon*, 403 F.3d 1208, 1215 (11th Cir. 2005)). "Classic prior restraints have involved judge-issued injunctions against the publication of certain information[,]" *Cooper*, 403 F.3d at 1215 (alteration added; citation omitted), as well as permitting and licensing ordinances, *see Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1223 (citations omitted); *see also United States v. Frandsen*, 212 F.3d 1231, 1237 (11th Cir. 2000) (scheme requiring permitting for demonstrations in parks was a prior restraint).

A government scheme or policy can be a prior restraint, "although not formally a licensing or permitting scheme," where it nevertheless prevents speech or coerces prospective speakers. *Barrett*, 872 F.3d at 1223 (alteration added); *see also id.* (policy was a prior restraint because it prevented individuals from speaking at a school board meeting unless they complied with the policy's requirements); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 59–63, 66 (1963) (state commission, although unable to impose legal sanctions, investigated objectionable publications, sent threatening notices to publishers, and warned of possible referral for prosecution).

Further, "[p]rior restraints contrast with subsequent punishments, which regulate a given type of speech by penalizing the speech only *after* it occurs." *Barrett*, 872 F.3d at 1223 (alteration added; emphasis in original; quotation marks and citations omitted); *see also Cooper*, 403 F.3d at 1215–16 (threat of criminal sanctions imposed after publication was not a prior restraint; a prior restraint silences someone before he can speak (citation omitted)); *Coley-Pearson v. Martin*, 689 F. Supp. 3d 1339, 1370 (S.D. Ga. 2023) (challenged provision was "not a prior restraint because it d[id] not require an application for or prior approval of [the p]laintiff's speech" (alterations added)).

Plaintiff fails to adequately allege a prior restraint on her speech. First, contrary to Plaintiff's contention that one of the officers who visited her home "directed her to 'refrain from posting things like'" the Comment (Resp. 14 (quoting SAC ¶¶ 6, 80, 121, 132, 143)), the video linked in the pleading shows that the officer said to Plaintiff "I would think to refrain from posting things like that" (Police Encounter Video at 1:23–1:27).[5] The police officers certainly discouraged

[5] On a motion to dismiss, the Court may consider a document incorporated by reference into the pleading where (1) it is central to the claim; (2) its contents are alleged in the complaint; and (3) the contents are undisputed. *See Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020) (citations omitted). As all three factors are met here, the Court considers the video. (*See* Mot. 5 n.3; Resp. 3–4 & n.1); *accord Quinette*, 805 F. App'x at 700 (considering video footage on motion to dismiss); *Sheets v. Jimenez*, No. 24-cv-704, 2025 WL 807345, at *1 n.3 (M.D. Fla. Mar. 13, 2025) (considering video footage on motion to dismiss

Plaintiff from posting content similar to the Comment, but they did not affirmatively direct her not to do so.

Second, Plaintiff does not allege a prior restraint consistent with those recognized under relevant precedent. While courts recognize restraints beyond injunctions or permitting regulations, those restraints nevertheless involve some sort of government scheme or policy whose collective effect prevented speech before it occurred. *See, e.g.*, *Bantam Books*, 372 U.S. at 59–63, 66; *Barrett*, 872 F.3d at 1223. Plaintiff's allegations regarding one informal interaction with law enforcement are unlike the structured governmental campaigns that can constitute prior restraints.[6]

Third, even if the police visit could be viewed, as Plaintiff suggests, to create "fear of additional law enforcement action" (Resp. 15 (citation omitted)), reliance on the threat of post-speech consequences would run up against "the distinction, solidly grounded in [case law], between prior restraints and subsequent punishments." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (alteration added). Certainly, the interaction did not outright "*forbid* [her] from engaging in any expressive activities in the future, nor [did] it require [her] to obtain prior approval for any expressive activities." *Id.* at 550–51 (emphasis in original; alterations added).

---

where pleading included link to video (citation omitted)). Further, where "the video is clear and obviously contradicts the plaintiff's alleged facts, [courts] accept the video's depiction instead of the complaint's account, and . . . view the facts in the light depicted by the video." *Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024) (alteration adopted; other alterations added; quotation marks and citation omitted)).

[6] Plaintiff cites authorities that fail to persuade she alleges a prior restraint. For example, in *Speech First, Inc. v. Cartwright*, the plaintiff challenged a public university's speech policies, which articulated standards for expression constituting discrimination and bias and set forth procedures to respond to such expression. *See* 32 F.4th 1110, 1113–18, 1123–24 (11th Cir. 2022). *CAIR-Found., Inc. v. Desantis* involved a challenge to a governor's designation of an entity as a terrorist organization and withholding of benefits from those associated with the entity. *See* 822 F. Supp. 3d 1263, 1268–69 (N.D. Fla. Mar. 4, 2026). Finally, in *Okwedy v. Molinari*, a government official sent a letter to a billboard company condemning the content of one of its displays and asking the company to contact a government agency to discuss the issues raised in the letter. *See* 333 F.3d 339, 341–42 (2d Cir. 2003). None describes a situation comparable to the alleged exchange at Plaintiff's home: a one-time discussion between Plaintiff and government officials divorced from any broader governmental scheme.

In sum, as Plaintiff fails to adequately allege a prior restraint, Count III is dismissed.

**D. <u>Counts I & II (the City)</u>**

Plaintiff asserts Counts I and II against the City on a theory distinct from that relevant to the Individual Defendants: municipal liability for the City's alleged policies and practices under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). To state a claim for municipal liability on a constitutional claim brought under section 1983, "a plaintiff must sufficiently allege that (1) constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation." *Betancourt v. Sanchez*, No. 25-12240, 2026 WL 2546421, at *11 (11th Cir. Aug. 28, 2026) (quotation marks and citation omitted).

Defendants contest only whether Plaintiff adequately alleges the second element. (*See* Mot. 16–18; Reply 7–9). As to that element, municipal entities "may be held liable only if . . . constitutional [violations] result from" (1) "an official government policy"; (2) "a custom or practice so pervasive and well-settled that it assumes the force of law"; or (3) "the actions of an official fairly deemed to represent government policy[.]" *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (alteration added; citations omitted). "An official municipal policy is a 'statute, ordinance, regulation[,] or decision officially adopted and promulgated by a local governing body's officers.'" *Gibson v. City of W. Palm Beach*, No. 24-cv-81290, 2025 WL 1272843, at *3 n.2 (S.D. Fla. Apr. 15, 2025) (alteration added; other alteration adopted; quoting *Monell*, 436 U.S. at 690). In alleging a custom or practice, "a single incident of unconstitutional activity is insufficient." *Downing v. Wal-Mart Stores E., LP*, No. 25-cv-2564, 2026 WL 2329774, at *4 (M.D. Fla. Aug. 12, 2026) (citing *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1311 (11th Cir. 2011)).

Plaintiff alleges the City "has adopted a policy and practice of targeting for punishment and suppression advocacy for the Palestinian people and/or criticism of the State of Israel." (SAC ¶ 25). Plaintiff bases this allegation on: (1) a March 2024 City ordinance regulating protests whose alleged purpose "was to impair the expression of views critical of Israel" (*id.* ¶ 29 (quotation marks and citation omitted)); (2) a September 2024 City ordinance prohibiting the City from contracting with entities that boycott Israel (*see id.* ¶ 30 (citation omitted)); (3) a March 2025 incident in which Meiner clashed with a Miami Beach movie theater that chose to screen a film about Palestine that Meiner considered offensive (*see id.* ¶¶ 31–37 (citations omitted)); and (4) instances (in September 2024, April 2025, and February 2026) of Meiner treating differentially speakers at Commission meetings based on whether they expressed viewpoints in favor of or against Israel (*see, e.g.*, *id.* ¶¶ 38–46, 91–95 (citations omitted)).

Plaintiff's allegation, taken as true, that the City adopted a view-point discriminatory ordinance is sufficient on its own to adequately allege an official government policy. (*See* SAC ¶ 29); *see also Gibson*, 2025 WL 1272843, at *3 n.2 (quoting *Monell*, 436 U.S. at 690).[7] As Defendants argue Counts I and II should be dismissed as to the City only because Plaintiff fails to adequately allege a municipal custom or policy (*see* Mot. 16–18; Reply 7–9),[8] the Court declines to dismiss these Counts as to the City.

---

[7] Defendants do not persuasively contend with Plaintiff's allegation of the City's "official government policy[.]" *Denno*, 218 F.3d at 1276 (alteration added); (*see also* SAC ¶ 29; Mot. 16–18; Reply 7–9). For example, to satisfy Federal Rule of Civil Procedure 8, Plaintiff surely need not "*establish*[] that any of the activities alleged are unlawful or unconstitutional." (Mot. 17 (alteration and emphasis added)). Further, Defendants rely on *Riddle v. Omaha Public Schools*, No. 23-cv-547, 2024 WL 1953758, at *5 (D. Neb. Apr. 19, 2024), *aff'd*, 2024 WL 3964113 (8th Cir. Aug. 28, 2024), but the cited portion discusses only whether the plaintiff there adequately alleged an unofficial custom, as distinct from an official government policy. *See id.*

[8] While all parties raise arguments common to Counts I, II, and III as to the City (rather than specific to any of the three Counts), "a *Monell* claim is derivative of[ — ]and thus requires[ — ]an underlying constitutional violation." *Aracena v. Gruler*, 347 F. Supp. 3d 1107, 1120 (M.D. Fla. 2018) (alterations added; citation omitted); *see also Betancourt*, 2026 WL 2546421, at *11 (first element of *Monell* claim is

**E. <u>Count IV</u>**

**1. Suarez**

Count IV is a viewpoint discrimination claim asserted against the City and Suarez based on Suarez's "blocking" of Plaintiff from Suarez's Facebook account. (*See* SAC ¶¶ 146–69). Defendants assert that Plaintiff fails to allege Suarez was acting under color of state law as required under 42 U.S.C. section 1983. (*See* Mot. 20–22; Reply 9–11).

"Section 1983 provides a cause of action against 'every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State' deprives someone of a federal constitutional or statutory right." *Lindke v. Freed*, 601 U.S. 187, 194 (2024) (alteration adopted; emphasis omitted); *see also id.* at 195 n.1 (actions taken under color of City law, custom, or usage count as state action for purposes of section 1983 (citation omitted)). This requirement applies whether a section 1983 defendant is sued in his official or individual capacity. *See, e.g.*, *Nicholes v. Jano*, No. 18-cv-774, 2020 WL 2615529, at *5 (M.D. Fla. May 22, 2020).

A "public official's social-media activity constitutes state action under [section] 1983 only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Lindke*, 601 U.S. at 198 (alteration added). Where, as here, the plaintiff complains of a page-wide blocking, the relevant inquiry into the second factor is whether the government official purported to exercise state authority in connection with *any* post with which the plaintiff wanted to interact. *See id.* at 204. The parties dispute whether Plaintiff adequately alleges both elements. (*See* Mot. 20–22; Resp. 19–22; Reply 9–11).

---

a violation of constitutional rights); *Chae Bros., LLC v. Mayor & City Council of Balt.*, No. 17-1657, 2018 WL 1583468, at *6 (D. Md. Mar. 30, 2018) ("[T]o state a *Monell* claim for municipal liability, a plaintiff must first adequately plead the elements of the alleged constitutional injury." (alteration added)). In any event, the Court assesses only the bases for dismissal that Defendants raise.

As to the first element, Suarez's authority to speak on the City's behalf may derive from statute, ordinance, regulation, custom, or usage. *See Lindke*, 601 U.S. at 200. A written law such as an ordinance could empower Suarez to make official announcements. *See id.* "Custom and usage encompass persistent practices of state officials that are so permanent and well settled that they carry the force of law." *Id.* (alteration added; quotation marks and citation omitted); *see also id.* (custom and usage may be shown "if, for instance, prior city managers have purported to speak on [a city's] behalf and have been recognized to have that authority for so long that the manager's power to do so has become permanent and well settled" (alteration added; quotation marks and citation omitted)).

Plaintiff does not adequately allege Suarez possessed actual authority to speak on the City's behalf. As for custom or usage, the pleading contains allegations about the appearance of Suarez's Facebook page and the way Suarez used it. (*See* SAC ¶¶ 148–52). But Plaintiff's only allegations about the *City's authorization* that Suarez to speak on its behalf are a conclusory, "formulaic recitation" of relevant standards, *Twombly*, 550 U.S. at 555, devoid of supporting facts (*see* SAC ¶¶ 153–56). And the pleading lacks even a conclusory allegation that Suarez's speaking on the City's behalf via his Facebook page was part of a pattern of "persistent practices of state officials" such that his conduct was part of a "longstanding custom to speak for the" City. *Lindke*, 601 U.S. at 200–01 (quotation marks and citation omitted).

In her Response, Plaintiff appears to abandon a custom or usage theory, instead asserting that certain provisions of the City code not referenced in the pleading afford Suarez authority to speak on the City's behalf. (*See* Resp. 19–20; *see also generally* SAC). But of course — putting aside whether those provisions in fact operate as Plaintiff submits — "plaintiffs cannot amend their

complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citation omitted).

In short, Plaintiff fails to adequately Suarez blocked Plaintiff under color of state law, as required to state a section 1983 claim. *See Lindke*, 601 U.S. at 194. Thus, Count IV is dismissed as to Suarez.

**2. The City**

Plaintiff fails to respond to Defendants' arguments that Count IV is inadequately pleaded as to the City — arguments separate from those Defendants raise regarding Counts I, II, and III as to the City. (*See* Mot. 16–19). While Plaintiff does not specify which Counts her response arguments regarding the City encompass, that portion of the Response discusses only Defendants' arguments regarding Counts I–III as to the City, not those regarding Count IV as to the City. (*Compare* Mot. 16–19, *with* Resp. 15–19; *see also* Reply 9 (noting Plaintiff's waiver)). The portion of the Response devoted to Count IV is silent regarding that claim as against the City. (*See* Resp. 19–22).

A "party that fails to address an argument in a motion when responding to the motion is generally considered to have waived that argument." *A & O Plumbing Corp. v. Travelers Cas. & Sur. Co. of Am.*, No. 25-cv-20986, 2025 WL 3091151, at *2 (S.D. Fla. Oct. 7, 2025) (citation omitted). Plaintiff has waived the argument that Count IV states a claim as to the City; Count IV is dismissed as to the City.

**F. <u>Qualified Immunity (Meiner & Jones)</u>**

Meiner and Jones — both sued in their individual capacities (*see* SAC ¶¶ 22, 24) — assert qualified immunity as defenses to the claims brought against them. As the Court has dismissed all Counts brought against Suarez, it considers only the parties' qualified immunity arguments as to

Meiner and Jones. (*See* Mot. 22–26; Resp. 22–24; Reply 11–14). Where applicable, this protection bars only requests for monetary relief against qualifiedly immune defendants. *See Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 340 n.4 (11th Cir. 1995) ("Because qualified immunity is only a defense to personal liability for monetary awards . . . , qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." (alteration added; citations omitted)).

To invoke the defense of qualified immunity, a government official must demonstrate "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quotation marks and citations omitted). The burden then "shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted). A plaintiff makes this showing by establishing that (1) the defendant's conduct violated the plaintiff's constitutional rights; and (2) the constitutional violation was clearly established. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citations omitted).

> There are three ways a plaintiff may show a right is clearly established:
>
> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (quotation marks and citation omitted). The second and third paths "are rarely-trod ones." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (citation omitted). As for the second path, the Supreme Court has admonished courts not to "define clearly established law at a high level of generality[.]" *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (alteration added; quotation marks and citation omitted); *see also White v.*

*Pauly*, 580 U.S. 73, 79 (2017) (noting the "clearly established law must be particularized to the facts of the case" (quotation marks and citation omitted)).

To that end, a plaintiff seeking to overcome qualified immunity by citing a broad rule of law must show the rule applies "with 'obvious clarity' to the circumstances" of her case, *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) (quotation marks and citations omitted), such that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted[,]" *Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012) (alteration added; quotation marks and citations omitted). But qualified immunity does not apply "simply because the very action in question has not been held unlawful[.]" *Id.* (quotation marks and citation omitted). "Although the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (alteration adopted; quotation marks and citation omitted).

Plaintiff does not contest that Meiner and Jones were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred, so the burden shifts to her to show qualified immunity is inappropriate. (*See* Resp. 22–24); *Courson*, 939 F.2d at 1487. The Court has discussed whether Plaintiff alleges Meiner and Jones violated Plaintiff's constitutional rights; Plaintiff focuses only on the latter requirement of her showing: whether the constitutional violation was clearly established. (*See* Resp. 23–24 & n.13).

Plaintiff relies on a broad statement of legal principle to show a clearly established right. (*See id.* 23). According to Plaintiff, the "broad principle at work in this case is that government may not retaliate against its citizens for engaging in First Amendment-protected speech." (*Id.* (citations omitted)). But reference to this principle is insufficient for Plaintiff to carry her burden.

As framed, it is not "particularized to the facts of the case[,]" *White*, 580 U.S. at 79 (alteration added), running afoul of the directive not to "define clearly established law at a high level of generality," *Plumhoff*, 572 U.S. at 779 (quotation marks and citation omitted); *contra Duncan v. City of Sandy Springs*, No. 20-13867, 2023 WL 3862579, at *6 (11th Cir. June 7, 2023) ( finding the right to be free from retaliation for verbal criticism and challenge directed at a police officer to be clearly established (citation omitted)).

That said, the Eleventh Circuit has reached divergent outcomes on two appeals where a plaintiff resisting the application of qualified immunity referenced a legal principle worded similarly to that which Plaintiff invokes here. In one, the court found the plaintiff had failed to carry her burden by asserting "that the act of retaliation for the exercise of constitutional rights is clearly established as a violation," reasoning it was too broad a concept to put the defendant on notice of the constitutional violation. *Echols*, 913 F.3d at 1324; *see also id.* at 1325.

In another, the Eleventh Circuit affirmed the finding that defendants were not entitled to qualified immunity given "it is settled law that the government may not retaliate against citizens for the exercise of First Amendment rights[.]" *Bennett*, 423 F.3d at 1256 (alteration added; quotation marks and citation omitted). In *Bennett*, the plaintiffs were individuals who supported a referendum in Forsyth County, Georgia that would have restructured the county's law enforcement and reduced the powers of the local sheriff's department. *See id.* at 1248–49. The plaintiffs alleged an expansive campaign of retaliation against them:

> Among many other acts of intimidation, they allege the defendants took down license tag numbers of cars at a forum in support of the referendum, surveilled the plaintiffs' homes and businesses, set up roadblocks near their homes, stopped their cars without reason and issued false traffic citations, accessed government databases to obtain confidential information on the plaintiffs, attempted to obtain a warrant for their arrest on trumped-up environmental charges, and mailed flyers to 35,000 homes in Forsyth County calling the plaintiffs the "real criminals," members of a "chain gang," and "the same type of criminals that terrorize Forsyth County."

*Id.* at 1249. There, certainly, "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Terrell*, 668 F.3d at 1256 (quotation marks and citation omitted).

The same is not true of Plaintiff's allegations regarding Meiner's and Jones's conduct, which simply does not rise to the level of that in *Bennett*. It would not be apparent to "*every* objectively reasonable government official" that the officers' interaction at Plaintiff's home would violate Plaintiff's rights, *Terrell*, 668 F.3d at 1256 (emphasis added; quotation marks and citation omitted); and Plaintiff fails to persuade otherwise (*see* Resp. 23–24). Plaintiff has not carried her burden by referencing an overly general legal principle that would not have put Meiner and Jones on notice regarding their alleged deprivation of Plaintiff's constitutional rights. *See Echols*, 913 F.3d at 1324.

Meiner and Jones are entitled to qualified immunity. Plaintiff therefore may not obtain monetary relief from them. Because Plaintiff seeks declaratory and injunctive relief against both Defendants (*see* SAC 32–33), the Court does not dismiss the surviving claims against them, *see, e.g.*, *Atheists of Fla., Inc. v. City of Lakeland*, 779 F. Supp. 2d 1330, 1342 (M.D. Fla. Mar. 15, 2011) (citation omitted); *Doe v. Consol. City of Jacksonville*, No. 09-cv-565, 2011 WL 13295398, at *11 (M.D. Fla. Mar. 11, 2011) (citations omitted).

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants, Steven Meiner, David Suarez, Wayne Jones, and City of Miami Beach's Motion to Dismiss **[ECF No. 77]** is **GRANTED in part**. Count I is **DISMISSED** as to

Jones and Suarez. Count II is **DISMISSED** as to Suarez. Counts III and IV are **DISMISSED**; thus, Suarez is **DISMISSED** from the case.

2. Meiner, Jones, and the City shall answer the Second Amended Complaint **[ECF No. 59]** by **October 12, 2026**.

3. The Court's June 29, 2026 Order **[ECF No. 73]** staying discovery as to Meiner and Jones is **SET ASIDE**. Discovery is no longer stayed.

**DONE AND ORDERED** in Miami, Florida, this 28th day of September, 2026.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**