**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:26-cv-21901-CMA

RAQUEL PACHECO

Plaintiff,

v.

CITY OF MIAMI BEACH, a Florida municipal corporation; STEVEN MEINER, in his individual capacity; and WAYNE A. JONES, in his individual capacity

Defendants.

______________________________________/

**DEFENDANT STEVEN MEINER'S MOTION FOR JUDGMENT ON THE PLEADINGS AND INCORPORATED MEMORANDUM OF LAW**

Defendant Steven Meiner, sued in this action in his individual capacity only, moves under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings on all claims that remain against him, and states as follows.

## INTRODUCTION

After the Court's September 28, 2026 Order on Defendants' joint motion to dismiss, very little of this case is still directed at Mayor Meiner, and what is left cannot be granted against him. The Order narrowed Counts I and II to a single episode: the January 12, 2026 visit by two Miami Beach police officers to Plaintiff's home. The conduct at the February 5 and May 20, 2026 Commission meetings was held not to be a restriction on speech for purposes of Count I and not to be an adverse action for purposes of Count II. ECF No. 88 at 7–8, 11–12. Count III was dismissed outright, and Count IV was never brought against Meiner. *Id.* at 15, 17–19. The Order then held that Meiner is entitled to qualified immunity, and that "Plaintiff therefore may not obtain

monetary relief from" him. *Id.* at 23. What remains against Meiner personally is a request for a declaration and a permanent injunction arising out of one police visit on a single afternoon five months before Plaintiff filed the operative pleading.

Two independent defects, each apparent on the face of the pleadings, foreclose that relief.

First, Plaintiff lacks Article III standing to seek prospective relief against Meiner. A plaintiff seeking a declaration or an injunction must plead a substantial likelihood of future injury; past exposure to unlawful conduct will not do. The Second Amended Complaint pleads no facts suggesting that the conduct Plaintiff alleges, a single police visit on January 12, 2026, is likely to recur. To the contrary, it shows that more than two years of Plaintiff's public criticism of the Mayor, on the same subject, produced exactly one police contact. The Court has already characterized that contact as "a one-time discussion between Plaintiff and government officials divorced from any broader governmental scheme." *Id.* at 14 n.6.

In addition, Plaintiff alleges that Meiner sent the police.[1] ECF No. 59 at ¶ 66. Plaintiff's own pleadings, however, simultaneously admit that the police chief has publicly stated that it was his decision alone. *Id.* at ¶ 105. Moreover, even on Plaintiff's allegations, Plaintiff does not claim that Meiner would send police in the future. *See id. generally*. Because a claim seeking injunctive relief and/or declaratory relief would require showing a substantial likelihood of future injury, Plaintiff's claims against Meiner must be dismissed on the face of her pleadings.

---

[1] To be clear, Meiner disputes — and Chief Jones confirms, ECF No. 59 at ¶¶ 104-105 — that he ever sent officers to Plaintiff's door and the evidence in this case will conclusively demonstrate that the decision to send officers to Plaintiff's home for a "knock and talk" was completely within the discretion of the Miami Beach Police Department and their decision alone. However, even accepting the allegations as true for the purposes of this motion, judgment on the pleadings should be granted for the reasons stated herein.

Second, any declaratory or injunctive relief against Meiner would be entirely redundant. The City of Miami Beach remains a defendant on Counts I and II. *Id.* at 16. The only conduct Plaintiff asks the Court to enjoin — sending officers to her home — can be carried out only through the City's police department, and the requested injunction against the City seeks to bind the City's "officers, agents, servants, employees, and attorneys" who receive notice of it. Fed. R. Civ. P. 65(d)(2)(B). Plaintiff's own prayer for relief invokes that rule. ECF No. 59, p. 33, Prayer ¶ E.

Because qualified immunity has already removed every monetary remedy against Meiner, judgment on the pleadings as to the remaining equitable relief disposes of the case as to him entirely.

## BACKGROUND

Plaintiff filed the operative Second Amended Complaint on June 12, 2026 ("SAC"). ECF No. 59. It names the City, Meiner, David Suarez, and Police Chief Wayne A. Jones as Defendants. *Id.* Meiner, the Mayor of Miami Beach, is sued in his individual capacity only. *Id.* ¶ 22; *see also* ECF No. 88 at 19. Plaintiff's earlier pleading had also named Meiner in his official capacity; after Defendants moved to dismiss the official-capacity claims as redundant of the claims against the City, ECF No. 39 at 9–10, Plaintiff omitted them from the SAC.

Plaintiff alleges that she began criticizing Meiner on Facebook and Instagram shortly after he took office in November 2023, SAC ¶¶ 50–52, and that "[o]n or around January 2024, Plaintiff began to criticize Defendant Meiner's unequivocal support of Israel and retaliation against anyone who disagreed with him on Facebook and Instagram." *Id.* ¶ 53 (emphasis added). She alleges that on January 7, 2026, she posted a comment on Meiner's Facebook page; that on January 11, 2026, Meiner emailed the post to the Police Chief; and that on January 12, 2026, two Miami Beach police

officers came to her home to ask whether the post was hers. *Id.* ¶¶ 57, 59, 66–79. The video Plaintiff recorded of the interaction is one minute and 46 seconds long. ECF No. 88 at 3.

Count I alleges viewpoint discrimination and Count II alleges First Amendment retaliation, each based on two categories of conduct: the January 12, 2026 police visit, and the remarks made about Plaintiff at the February 5 and May 20, 2026 Commission meetings. SAC ¶¶ 113–136. Count III alleged a prior restraint against the City, Meiner, and Jones. *Id.* ¶¶ 137–145. Count IV was asserted only against the City and Suarez. *Id.* ¶¶ 146–169.

By Order dated September 28, 2026, the Court granted the joint motion to dismiss in part. ECF No. 88. As relevant here, the Court held:

- The Commission-meeting conduct is not a restriction on speech that can support Count I, because "[t]hat discourse — however zealous and disapproving it may have been — does not prevent or affirmatively discourage Plaintiff's speech." *Id.* at 7–8. The police visit is "the only alleged restriction on speech that can form the basis of a viewpoint discrimination claim[.]" *Id.* at 8.
- The Commission-meeting conduct likewise cannot support Count II, because Plaintiff did not allege that any Individual Defendant threatened, coerced, or intimidated her. *Id.* at 11–12.
- Count III was dismissed; Plaintiff's "allegations regarding one informal interaction with law enforcement are unlike the structured governmental campaigns that can constitute prior restraints." *Id.* at 14. The Court described the encounter as "a one-time discussion between Plaintiff and government officials divorced from any broader governmental scheme." *Id.* at 14 n.6.
- Count IV was dismissed, and Suarez was dismissed from the case. *Id.* at 19, 24.

- "Meiner and Jones are entitled to qualified immunity. Plaintiff therefore may not obtain monetary relief from them." *Id.* at 23. The Court declined to dismiss the surviving claims against them "[b]ecause Plaintiff seeks declaratory and injunctive relief against both Defendants[.]" *Id.*
- Counts I and II were not dismissed as to the City, which remains in the case on Plaintiff's municipal-policy theory. *Id.* at 16.

The relief Plaintiff seeks against Meiner is set out in the prayer: declarations that the conduct at her home constituted viewpoint discrimination, retaliation, and a prior restraint, SAC, p. 32–33, Prayer ¶¶ A–C; a permanent injunction "restraining and enjoining Defendants City of Miami Beach, Meiner and Jones, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them (*see* Fed. R. Civ. P. 65(d)(2)), from sending officers to Plaintiff's home or going to her home to confront her about constitutionally protected speech[,]" *id.*, p. 33, ¶ E; compensatory damages, *id.*, p. 34, ¶ G; punitive damages against the individual defendants, *id.* ¶ H; and fees and costs under 42 U.S.C. § 1988, *id.* ¶ I. The Order has already eliminated paragraphs C, G, and H as to Meiner.

Meiner, Jones, and the City answered the SAC on October 12, 2026, as the Order directed. ECF Nos. 89, 90, 91. The pleadings are therefore closed and this motion is timely. *See* Fed. R. Civ. P. 12(c); *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014).

## LEGAL STANDARD

Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). The Court "must accept the facts alleged in the complaint as true and view them in the

light most favorable to the nonmoving party." *Id.* Failure to state a claim may be raised by a Rule 12(c) motion. Fed. R. Civ. P. 12(h)(2)(B). And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Standing is a threshold jurisdictional question, and a federal court must satisfy itself that the plaintiff has it "regardless of whether … the parties have briefed the standing issue." *Scott v. City of Daytona Beach, Fla.*, 186 F.4th 1286, 1295–96 (11th Cir. 2026).

This motion rests on the SAC, the answers, the Court's September 28, 2026 Order, and the video of the police encounter that the SAC links and incorporates and that the Court has already held it may consider. ECF No. 88 at 13 n.5. Taking every allegation of the SAC as true, the pleading does not establish a case or controversy as to prospective relief against Meiner.

## <u>ARGUMENT</u>

**A. Plaintiff lacks Article III standing to seek declaratory or injunctive relief against Meiner because the pleadings allege no real and immediate threat that he will repeat the conduct.**

Where a plaintiff seeks prospective relief rather than damages for a completed injury, "a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). That requirement exists because injunctions govern future conduct; they do not redress injuries already complete. *See Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.").

The controlling principle is settled: "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *accord Lyons*, 461 U.S. at 102. The same limit applies to declaratory relief. The plaintiff "must assert a reasonable expectation that the injury [she has] suffered will continue or will be repeated in the future[,]" and "[t]he remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Malowney*, 193 F.3d at 1347 (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)). A "'perhaps' or 'maybe' chance is not enough." *Id.* Measured against that standard, the pleadings do not support prospective relief against Meiner.

***1. The only surviving conduct is a single, completed encounter.***

The Order confined Counts I and II to the January 12, 2026 police visit and excluded the Commission-meeting conduct from both. ECF No. 88 at 7-8, 11–12. Count III, which rested on the same visit, was dismissed. *Id.* at 15. So the universe of conduct still attributed to Meiner is one afternoon: officers came to the door, asked whether a Facebook comment was Plaintiff's, and left. The video Plaintiff recorded of that interaction, as the Court noted, is one minute and 46 seconds long. *Id.* at 3.

The Second Amended Complaint alleges no second visit, no threatened visit, and no statement by Meiner that he intends to refer Plaintiff's speech to the police again. It alleges the opposite of a continuing course of conduct: an email on January 11, a police response on January 12, and nothing of the kind in the five months thereafter, when Plaintiff filed her Second Amended Complaint. SAC ¶¶ 59–83.

***2. The Second Amended Complaint itself confirms that the January 12 visit was an isolated event.***

Plaintiff alleges that she has publicly criticized Meiner on Facebook and Instagram since shortly after he took office in November 2023, *id.* ¶¶ 50–52, including his "unequivocal support of Israel[,]" beginning "[o]n or around January 2024." *Id.* ¶ 53. Yet across the two years of that criticism that preceded the visit — January 2024 through January 11, 2026 — the pleading identifies no police contact of any kind. The only police contact at her home or about her online speech it identifies is the January 12, 2026 visit. Even Plaintiff's alleged fear of future action rests on "this prior experience" — one event. *Id.* ¶ 87.

"[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea*, 414 U.S. at 496. Here, the past Plaintiff herself pleads points away from repetition: more than two years of pointed public criticism of the Mayor, on the same subject, produced a single contact with police, lasting under two minutes. A pleading that shows one contact across years of the same speech does not allege facts making a future contact substantially likely. *See Malowney*, 193 F.3d at 1346–47. It describes precisely the "past exposure" that courts hold insufficient. *O'Shea*, 414 U.S. at 495-96.

***3. The Court has already characterized the conduct as a one-time interaction.***

The Court has already described this conduct in terms that answer the standing question. In rejecting the prior-restraint theory, the Court explained that none of Plaintiff's authorities describes a situation comparable to the exchange at Plaintiff's home: "a one-time discussion between Plaintiff and government officials divorced from any broader governmental scheme." ECF No. 88 at 14 n.6. A one-time interaction divorced from any broader scheme is not a real and immediate threat of repetition. The pleaded history described above is consistent with that characterization.

***4. Plaintiff's allegations of self-censorship do not supply the missing element.***

Plaintiff alleges that she has refrained from posting content she otherwise would have posted. SAC ¶¶ 84–88.

Meiner does not dispute that, in a free-speech case, a chill on the plaintiff's expression can supply the likelihood of future harm that prospective relief requires. The Eleventh Circuit recently confirmed that "an ongoing chill constitutes both imminent harm for prospective-relief purposes . . . and actual, completed injury for retrospective-relief purposes[.]" *Scott*, 186 F.4th at 1296–97. But not every chill qualifies. The plaintiff must show that "the operation or enforcement of the government policy would cause a reasonable would-be speaker to self-censor" — that is, that it would "objectively chill[ ]" protected expression. *Id.* at 1296 (quoting *Henry v. Att'y Gen., Ala.*, 45 F.4th 1272, 1288 (11th Cir. 2022)). In *Scott*, that showing rested on an ordinance that remained in force and was being enforced against the plaintiffs themselves. They had "been arrested, threatened with arrest, or both for violating the ordinance," and "[i]n light of this enforcement history, a reasonable person would refrain" from the prohibited solicitation. *Id.* at 1298.

Plaintiff pleads nothing comparable as to Meiner. No ordinance, order, rule, or enforcement program of his operates on her speech. The fear she alleges rests, in her own words, on "this prior experience[,]" SAC ¶ 87, the single completed encounter the Court has described as "a one-time discussion between Plaintiff and government officials divorced from any broader governmental scheme." ECF No. 88 at 14 n.6. Two years of the same criticism without police contact, followed by a single visit that has not been repeated, would not "cause a reasonable would-be speaker to 'self-censor'" for fear that her next post will bring officers to her door. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022) (cleaned up). What remains is Plaintiff's own apprehension, and "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim

of specific present objective harm or a threat of specific future harm[.]" *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

Those allegations describe her own response to a past event. They say nothing about the likelihood that Meiner will repeat the conduct, which is the question Article III asks when prospective relief is sought. Under *Malowney*, the pleading must contain facts making future injury substantially likely; allegations about Plaintiff's state of mind are not such facts. 193 F.3d at 1346–47.

***5. The alleged City "policy and practice" is a claim against the City, not a forecast of Meiner's future conduct.***

Plaintiff alleges that the City "has adopted a policy and practice of targeting for punishment and suppression advocacy for the Palestinian people and/or criticism of the State of Israel." SAC ¶ 25. That allegation is the predicate of her municipal-liability theory, and it is the reason the Court declined to dismiss Counts I and II as to the City. ECF No. 88 at 16. It is not an allegation that Meiner personally is likely to send police to Plaintiff's home again.

The supporting allegations — a 2024 protest ordinance, a 2024 anti-boycott contracting ordinance, the 2025 dispute with a movie theater, and the conduct of Commission meetings, SAC ¶¶ 29–46 — describe legislative and administrative acts of the City and its Commission. None involves directing law enforcement to a resident's home, and the Court has already held that the Commission-meeting conduct is outside Counts I and II altogether. ECF No. 88 at 7-8, 11–12. Indeed, those allegations span the same period in which, by Plaintiff's own account, her criticism of the Mayor drew no police contact at all. Whatever they may do for Plaintiff's case against the City, they do not establish a substantial likelihood that Meiner will repeat the single act that remains at issue.

Because the pleadings disclose no real and immediate threat of repetition by Meiner, there is no case or controversy as to prospective relief against him, and that relief must be dismissed. Fed. R. Civ. P. 12(h)(3).

**B. Any declaratory or injunctive relief against Meiner would be wholly redundant of relief available against the City, which remains a defendant.**

The second defect is practical and dispositive on its own terms: there is nothing an order against Meiner would accomplish that an order against the City would not.

***1. The injunction Plaintiff seeks can be carried out only through the City's police department, and Rule 65(d)(2) already reaches it.***

The only conduct Plaintiff asks the Court to enjoin is sending officers to her home, or going to her home, to confront her about protected speech. SAC, p. 33, Prayer ¶ E. On the SAC's own allegations, the officers who came to her door were Miami Beach police officers, *id.* ¶¶ 66, 72, and Meiner's alleged role was an email to the City's Police Chief forwarding the offending post, *id.* ¶ 59, and the alleged directing of the police officers to her home, *id.* ¶ 66. Any repetition of that conduct could occur only through the City's police department. Meiner, as an individual, has no officers of his own to send. An order restraining him from sending officers to Plaintiff's home would therefore operate, in practice, only through the City and its police department.

The City remains a defendant on Counts I and II. ECF No. 88 at 16. An injunction binds "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2). The Mayor of Miami Beach is an officer of the City, and the police officers whose conduct Plaintiff seeks to restrain are its employees. Any injunction entered against the City restraining it from sending officers to Plaintiff's home to confront her about protected speech would bind Meiner by operation of the rule, whether or not he remains a named defendant.

Plaintiff's prayer recognizes as much. It expressly invokes Rule 65(d)(2) and asks that any injunction reach the named defendants' "officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them[.]" SAC, p. 33, Prayer ¶ E. By her own framing, retaining Meiner as a separate defendant adds no coverage.

Eleventh Circuit precedent confirms that a court need not keep both a municipality and its officers in a case to award the same relief. In *Busby v. City of Orlando*, the Eleventh Circuit affirmed the removal of individual defendants named in their official capacities because the City remained a defendant, explaining that "[t]o keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury." 931 F.2d 764, 776 (11th Cir. 1991).

*Busby* involved official-capacity defendants, but its logic does not depend on the label. Its premise is that relief available against the municipality need not be duplicated against the municipality's officers. That premise applies with full force here, where the only relief left against Meiner is relief that can be carried out only through the City. *See Busby*, 931 F.2d at 776 ("In Busby's action against the City of Orlando, the district court recognized that the intended defendant was actually the City.") Whatever label is attached to Meiner, the relief Plaintiff seeks runs through the City, which is already before the Court.

***2. The requested declarations are equally redundant.***

The same reasoning applies to the declaratory relief Plaintiff seeks. The declarations she requests concern the lawfulness of conduct in which the City, Meiner, and Jones are all alleged to have participated. SAC, p. 32-33, Prayer ¶¶ A–C. Plaintiff herself pleads that the City may be sued directly for declaratory relief, SAC ¶ 28 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)), and a declaration entered against the City resolves the constitutional question as fully as one entered against the Mayor personally. *Cf. Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th

Cir. 2025). The Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant[,]" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted), and where "a declaratory judgment will serve no useful purpose," a court need not "proceed to the merits before staying or dismissing the action." *Id.* at 288; *see also Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). A second declaration against Meiner would add nothing to the relief available against the City; whatever he did, he did as Mayor, and any prospective relief runs through the City and its police department.

**C. Judgment on the pleadings resolves the case as to Meiner in its entirety.**

Plaintiff's remaining requests for relief against Meiner are limited to declaratory and injunctive relief. The Court's Order forecloses compensatory and punitive damages against him, holding that he is entitled to qualified immunity and that "Plaintiff therefore may not obtain monetary relief from" him. ECF No. 88 at 23. With the equitable relief removed for the reasons above, nothing remains. Meiner is entitled to judgment on the pleadings on Counts I and II and to dismissal from this action.

## CONCLUSION

WHEREFORE, Defendant Steven Meiner respectfully requests that the Court enter judgment on the pleadings in his favor on Counts I and II of the Second Amended Complaint, dismiss him from this action, and grant such other and further relief as the Court deems just and proper.

Dated: October 22, 2026

Respectfully submitted,

**MARK FERRER & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

By: s/ *Etan Mark*
Etan Mark, Esq.

Florida Bar No. 720852
etan@mfh.law
Charles M. Garabedian, Esq.
Florida Bar No. 1000974
charles@mfh.law
Jonathan L. Wolloch, Esq.
Florida Bar No. 1039105
jonathan@mfh.law

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 22, 2026, a copy of the foregoing was electronically filed via the CM/ECF portal which will send electronic notification of the above filing to all registered users.

*s/ Etan Mark*
Etan Mark